Morning, Your Honors. I may please the Court. Manisha Duryani on behalf of Petitioner Terry Kitchen, understanding that I have ten minutes, I'd like to reserve two for rebuttal. Just watch the clock, Counsel. You control your time. Thank you. When this case was set for oral argument, I ended up speaking to my supervisor about the case and was curious because this case comes down procedurally for this Court to review as to whether or not the district court can consider a second or successive writ. We've got the same problem, and I didn't have a supervisor. So tell me what we're supposed to do with this case. And I know you want us to grant it, but tell me what our job is when reviewing an application for a second successive petition. Again, the standard that we must review is whether or not there's a prima facie case as to whether in this regard Miller is retroactive. And I do know, when looking into this case further, that the Ninth Circuit has had two opportunities to make such a decision and has passed on it. And in doing so — In nonpresidential cases? In nonpresidential, yes. So your view is that our only job is to determine whether there's a prima facie showing that Miller is retroactive? And that it applies. And I think that's why I brought up the two prior cases. It's that second half that I'm having trouble with. Absolutely. And I think — Yes. So let's assume that Judge Smith and I are on the same wavelength here for a second. He'll tell me if I'm wrong. That we both think you've made a prima facie showing that Miller is retroactive, but that on the merits — Yes, it does matter. On the merits, we're not so sure the Supreme Court has told us, as it must in an AEDPA case, that a term of 40 to life is the equivalent of LLOP. What do we do with your petition, then? You know, I think that, actually, then we have to consider the particular facts of this case. And certainly the Court can't ignore that this is a case coming out of California. And I would hope, and if the Court is not familiar with the particular lawsuits that have been filed against CDCR and the Parole Board in regards to both overcrowding and the denial of grants of parole, I think that when you look at those cases, and if the Court are not familiar with those cases, I'm happy to provide them. Sotomayor, I'm not quite sure you've responded to Judge Hurwitz's question. Assuming that we are not convinced that 40 to life is the equivalent of LLOP, then what? In other words, do we send that to the district court for the judge to say that or do we decide that ourselves? That's — we have a procedural issue here, and we don't have the merits of the case fully in front of us. I think it's probably retroactive. Counsel may persuade me to the contrary. But I kind of think you're going to lose on the merits if we let you file, because we'd have to file with the California court. A Federal court would have to find that the California court of appeal was unreasonable in light of existing Supreme Court precedent. And so the standard. Do you agree with that? Do you not? No, I do agree with that, Your Honor. So that's my question. And that's sort of why I was giving a longer-winded answer to the question. Yes. I understand. Your answer is you'd like to show that in California, 40 years to life is really life because they never grant parole. They don't. Or something like that. And so my question is, procedurally, how do we deal with that? And again, I think this is a question of prima facie, right? And so if we look at prima facie, the Court can say, do reasonable minds differ as to whether or not 40 to life is life for the purposes of Petitioner in this case? And I think that's when we start to talk about the things that were raised initially in the actual petition that was supplied alongside with the motion for successive writ. And then on top of that, I wanted to point out this new case that had come out. This was a February 28, 2014, decision. It's Gilman v. Brown. And again, it was not cited, and I'm happy to provide the case site for it. Would you file a supplemental citation with the Court? Yes. And again, it was a loss. At least so counsel can have a chance to respond. I apologize? At least so counsel can have a chance to review. Perhaps, and as it should, because this is, in many ways This was decided in February of this year? February of this year. And you have not provided us with that until orally this morning? I would agree, Your Honor, that it would be an oversight on my part that I did not provide it with you. But when I was reviewing this case and preparing it for oral argument, we understand having practiced in California very regularly, and I was a criminal defense attorney as well, that we understand here in California that when someone is sentenced for life, it is the equivalent of LWOP. And until this case came out in February 28th of 2014, there was no district court or Federal court that had agreed with that proposition. So let me make sure I understand your position. Your position is that Miller and the U.S. Supreme Court cases are retroactive, at least prima facie retroactive, and you would like the chance to prove to a district court that a sentence that is nominally 40 years to life is in real life? Is functionally equivalent of a life without the possibility of parole. Do you agree that if there were a possibility, a real possibility of parole after 40 years, that this would not contravene clearly established Supreme Court law? I think that if we were to consider how district courts and sister circuits have reviewed. I haven't found a case that's gone that low. Right. Certainly, and I think, again, while not citable, this Court did consider a case of 43 outright determinate and still found that it didn't think that Miller was retroactive. But notably, I will say this, the earlier cases dealt with whether or not there was discretionary versus mandatory sentencing, and certainly I think that does pull into play with a case like this, because while I think it's conceded, or should be conceded, this was a mandatory sentencing scheme. But, again, I would agree that if we could show a reasonable, and again, I want to quote the language of Miller, but not just an opportunity, but a meaningful and realistic opportunity at parole, I think the Court is correct and I think I can concede at that point that at 40 to life, perhaps, we could. But, again, we then have to consider, for the purposes of California, the overcrowding and what that does to life expectancy. Was this a mandatory sentence? This was a mandatory sentence, Your Honor. Roberts, no dispute about that. No. And I know that the Court was looking into the sentencing transcript and I realized that it was not, for some reason, the record that was provided by Respondent cut off. And I don't seem to have it either. But we do know, based on the California penal code, that this was a mandatory 15 to life with a subsequent 25 to life. There was no if, ands or buts about it. There was no qualms about it. It was a 40 to life and it's mandatory. The judge had no discretion in this case. And so, as I said, I think that we have a unique set of facts in this case that I think warrants a review by a district court. Again, given that this is a case coming out of California and given what we know about the current state of affairs, both of California prisons and of the grants of parole that come out of California. And so I think given that instances, the prima facie case, understanding that Miller is retroactive, has been made and we should send this down to a district court for an evidentiary hearing. And I feel as though I have three minutes, but I think I should reserve for rebuttal to allow Respondent to respond. I'm still curious about this prima facie showing. Is this a question of fact, that you're asking the court of appeals to decide? Or is this based on your being able to identify some other decision in which 40 years to life was determined to be equivalent to ELWA? There is no decision that has any court, in fact, has made that a 40 to life is the equivalent of ELWA. Well, but how about the other way? There's no decision that it is ELWA? Is that what the court is asking? How about the other way? There's no decision, or is there a decision, which suggests that it is not the equivalent of ELWA? There are cases in other jurisdictions, are there not? There are cases in other jurisdictions, that's correct. But again, I think that goes back to the question of what do we do, given the circumstances surrounding California statutory schemes for sentencing, and California's, I'll call it prison issues. Well, let me just, and I know I'm cutting into your time, but I'll ask you, I'd ask you this when you got back up anyway. So you scared me a little when you said we should send it back to the district court for an evidentiary hearing. Penholster tells us we should, you're stuck with the State court record. Did you make a State court record here? There was no State court record to be made, again, in the context of no court under the State, under State, when reviewed by the State court. Right. You filed for post-conviction relief in the California courts. Right. Never got an evidentiary hearing? No. Did you ask for one? Yes. Okay. On all three levels. It was asked to the Superior Court, it was asked to the third district court of appeal, it was asked to the California Supreme Court. It was denied on all three levels. Counsel, you have about a minute left. I'll reserve it for rebuttal. You may do so. Thank you. We'll hear from the State.  David Andrew Eldridge, Deputy Attorney General for Respondent. Mr. Eldridge. I do believe, if I can take what appears to be the easier question first, that Graham itself seems to make clear that 66, an expected release of age 66, does not equate to an LWOP term, because Graham was 16, and the court only spoke to the barracks  were the only places that he could get out, and there was no chance that he could get out after 50 years. So let's assume we agree with you that the length of the sentence on its face is not sufficient to invoke the Supreme Court decisions. I'm still trying to figure out procedurally. We're not here on the merits. We're here on an application to file a second or successive petition. Is that something we really look at? I mean, she wants to be able to make her case that, although it says 40 to life, it's really life. Should we give her a chance to make that case, even if we think she's not likely to succeed? I think the inquiry is, is there a prima facie showing that the district court could rule in favor of the petition? Okay. So let's assume that for the moment, because we're here just on the pleadings, that the other side's made a prima facie showing that Miller, et cetera, are retroactive. I know you disagree, but there's a bunch of circuits that have found it retroactive, so that's probably enough for me for a prima facie showing. I'm not asking you to agree with me. You can tell me why I'm wrong. And she says, I want to be able to prove that even though the sentence says 40 to life, it's really life because nobody ever gets parole. Is that enough for us to send it back to the district court? No. Even it's – there is nothing in Miller that reaches to the probability that in a particular jurisdiction, discretion will be exercised in some way that makes it very unlikely someone will get out. Does Miller use the words reasonable possibility or something like that? Well, Miller, for example, would not be implicated if you had particularly harsh judges in a jurisdiction that routinely gave LWOP despite their discretion to do so. The entire purpose of Miller – the entire point of Miller was that there must be discretion. The argument here isn't that there's a lack of discretion to release people. It's rather that that discretion ultimately, say, by the executive, will be exercised adverse to the defendant. So this is not – there's nothing mandatory. The argument is while, in fact, the governor has the discretion to release, he'll exercise it adversely. That's really their premise. There's nothing in Miller that even comes close to that because Miller points out the point is that there must be discretion. So I – on that point, I don't see how – But Miller's a different case because it was mandatory LWOP. Here we have a 40 to life, right? I – certainly it was different, yes, and indeed, yes. So – And so there's no discretion here to give anything but 40 to life, right? It's a mandatory sentence. That is correct. Go ahead, Judge. How do you compare 40 to life with any other decision made to determine whether it's equivalent to LWOP or not? I don't believe there's – I don't believe the Supreme Court – I'm looking for a yardstick here I can – I can measure against. Oh. Well, in that regard, I think it's very much an open question, Your Honor, that there isn't very much in the way out there to ever indicate that somehow a juvenile – given that the class we're talking about, all of them – Well, therefore, under AEDPA review, there is no contra showing out of the Supreme Court of the United States. Therefore, we affirm. Is that your argument? Yes. I have – if I can phrase it differently, if somehow you granted this and it went back down, on the way up, it would absolutely have to be that relief is denied. And I tend to agree with you. That's what – but I'm still trying to figure out what we're supposed to do. Normally, a motions panel will either grant or deny a successive petition. You may well have an overwhelming case on the merits, but my question is why shouldn't we give the other side a chance to make its argument to a district judge? Once that is clear that it simply can't prevail, it's hard to see how there's a prima facie case. And your position is that the other side can't possibly prevail because even if the President – the Director of Prisons and the Governor come in and say, I don't care what 40 to life is, it's life, the fact that there's a 40 in front of it means that they can't possibly prevail. So long as they have the discretion. Miller was all about a grant of discretion. But Miller was about the discretion with the judge, right? All right. Miller was about the judge being – having the discretion to give you something less than life without possibility of parole. Yes. And here – Are you talking about the discretion of the parole board or are you talking about the discretion of the sentencing judge? That's why – that's what the case is made. I believe I understand the point you're making. Indeed, Miller did talk about the judge. And the judge unmistakably has imposed something that, from the judge's perspective, should make you eligible for parole in 40 years. All right. The judge could give LWOP or not give LWOP under Miller. And the judge had to have discretion to give something other than LWOP. Yes. Here the judge gave a mandatory 40 to life sentence. Yes. Couldn't have given any less. Yes. And unless some Supreme Court case equates 40 years to life, 40 to life. And I'm with you. I don't think if there's a possibility of parole after 40 years that this violates any Supreme Court case. My question is, what if – I was asking you, what if everybody comes in and says, yes, that's what we say, but, you know, the truth is it's life. Everybody – it's life for everybody. There is no discretion. Miller certainly doesn't address that at all, Your Honor. And Moore addressed that? Moore v. Bader. Moore makes the point that, indeed, there are some sentences which are, if you will, no one could argue allow for parole during a lifetime. Several hundred years. Yes. Well, they have 254 years. Yes. So it seems to me that Moore supports the proposition that only sentences where the of life without parole. I agree. So what if there is no chance for parole? Well, no chance doesn't mean given all the circumstances that may occur in this guy's lifetime. It's rather, at the outset, we can determine there is simply no chance whatsoever. There's – one could not possibly say at the outset there is no chance. Indeed – Your opposing counsel says, well, regardless of all of that, as a practical matter, nobody gets parole in the California system. There's certainly no record showing that, and there is certainly no proffer of a record of that in State court. So I do believe Penholzer bars it. Can I take a minute, as though, to the retroactivity point? Sure. The question isn't simply whether or not this Court thinks there is an argument that it's retroactive, such that the district court might, in its own discretion, apply the principles of retroactivity and conclude it. It's whether there is a prima facie – could the district court find the Supreme Court retroactive? On that point, Tyler v. Cain has a passage at page 663. Which case? Tyler v. Cain. Tyler v. Cain. Where they say the only way is when they actually hold it. In other words – and this is their words – the Supreme Court does not make a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts. Here, unless they have a case where the Supreme Court did hold it retroactive, that's the end of it. The arguments from the other courts – by the way, a number of those decisions were simply based on concessions, so there's no analysis at all. Concessions by the government. That's true, but that is not the government's stance before you, Your Honor. The – and they may have had their own reasons for conceding. We disagree entirely. The closest that they come is saying, well, in Miller itself, it was applied retroactively. But I want to understand, Pendleton says you need a prima facie case of retroactivity. You're saying you can only make a prima facie case if it's been settled by the Supreme Court. The – the – No, he must make a prima facie case of the statutory standard. The standard – the statutory standard is that the Supreme Court has held, not the district. But I think we're saying the same thing. You're saying that unless the Supreme Court has held these decisions to be retroactive, that anybody seeking a second or successive habeas to argue their retroactivity must be turned down because the Supreme Court has never said so. Yes. There would have to be some reasonable possibility that the district court could find. Well, there's a reasonable possibility. Yeah, reasonable possibility that the district court could find that the Supreme Court has held it. That's – that's not really a reasonable possibility. Under your view, either the Supreme Court has held it or it hasn't, right? I would like to agree with you. Unfortunately, the Supreme Court is less than clear on that. That's what I'm thinking. But it is – but the closest they've gotten is that Miller itself applied it to someone on collateral review. The problem is that that's not a holding, that it's retroactive. But isn't there a reasonable possibility, then, that the Supreme Court would apply it to somebody other than Mr. Miller on collateral review? Again, they addressed that in Tyree v. Cain as well. But you are saying that unless the Supreme Court has squarely held that a case is retroactive, that nobody may file a second or successive habeas petition claiming it's retroactive? Yes. Sounds like a catch-22 to me. How is the Supreme Court ever going to get a case where it's going to decide that? Well, we know, for example, they addressed that in Tyree v. Cain itself because it was asked, well, please find it today. And they said, we can't. It must have preceded the application that the district court rules on to file a second or successive. Thank you, counsel. Your time has expired. Thank you, Your Honor. Thank you. Ms. Darvani, you have some reserve time. Yes, thank you. I understand this Court's concerns about what to do about procedurally with this case, and I think that it's not passing the buck to allow the district court to determine this case. I think that the facts of this case do give rise, that this case should, in fact, be sent down. A prima facie case has been made. California is extreme. It's the perfect storm. And while we can look at the number of cases, and this is the only thing that I have real problem with your argument. So if we had an Idaho case, then I would go one way, but a California case, I would go another when they're in the same circuit. I think that if the Court had to do that. I mean, that's a real worry to me, that you're suggesting that because I know the general system in Idaho, and I know they're a hard-nosed lot, and I know that they're the way they are, that you, I, on an unbiased basis, should decide a case that is in California different than one in Idaho? Your Honor, I see that my time is up. Can I please refer you to the district? You can answer my question. Okay. I don't think that this Court, permitting this case to go down to the district court, would necessarily result in inconsistent decisions. You're not answering my question. Okay. You're the one that's arguing this is a California case, and the California system, and the California penitentiary system, and people die in the California penitentiary system, and all this kind of stuff. And I just found the whole argument a little not really helpful. Okay. Especially for an Idaho judge who says, I got all these people sitting here in Idaho. This is a circuit. This is either a second, a successive, because it is a circuit, or it isn't. That's all I'm trying to say. And you to tell me why I should not take that approach. This Court is taking that approach by granting the successive writ, because then it allows the district court to fashion the considerations that should be considered in conjunction with Miller. It allows the court to not only consider the sentencing guidelines, which, obviously, we understand each jurisdiction is different. We understand the mandatory and discretionary schemes are different. We also understand that it allows, then, the court to consider whether a lifetail is in and of itself permissible under Miller or not permissible under Miller. And that's why this Court should grant. Roberts. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Smith, Hurwitz